UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LIZBETH RAMOS-CUEVAS, O/B/O J.R.C., a minor child, | NO:  15-CV-3091-FVS |
| Plaintiff, | REPORT AND RECOMMENDATION TO  DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, | |
| Defendant. | |
| | Tr. 16, 17 |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 16 and 17.  This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation.  ECF No. 21.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 16) be denied and Defendant's Motion (ECF No. 17) be granted.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

### THREE-STEP PROCESS FOR CHILDHOOD DISABILITY

To qualify for Title XVI supplement security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide a three-step process to determine whether a claimant satisfies the above criteria.  20 C.F.R. § 416.924(a).  First, the ALJ must determine whether the child is engaged in substantial gainful activity.  *Id*. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."  *Id*. § 416.924(c).  Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments."  *Id*. § 416.924(c)-(d).

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, he or she must determine whether the impairment or combination of impairments functionally equals a listing.  20 C.F.R.

§ 416.926a(a).  The ALJ's functional equivalence assessment requires him or her to evaluate the child's functioning in six "domains."  These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

> (1)  Acquiring and using information:

> (2)  Attending and completing tasks;

> (3)  Interacting and relating with others;

> (4)  Moving about and manipulating objects;

> (5)  Caring for self; and

> (6)  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitations in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

## ALJ'S FINDINGS

J.R.C. applied for supplemental security income on October 18, 2001, alleging an onset date of September 1, 2011.  Tr. 136-41.  The application was

denied initially, Tr. 76-82, and upon reconsideration, Tr. 86-92.  Plaintiff's mother

appeared for a hearing before an administrative law judge ("ALJ") on November 7,

2013.  Tr. 38-53.  On January 14, 2014, the ALJ denied Plaintiff's claim.  Tr. 15-

37.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since October 18, 2011, the application date.  Tr. 21.  At step two, the ALJ

found Plaintiff had the following severe impairments: oppositional defiant

disorder; attention deficit hyperactivity disorder ("ADHD"); and asthma.  Tr. 21.

At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed

impairments.  Tr. 21.  The ALJ then determined Plaintiff does not have an

impairment or combination of impairments that functionally equals the severity of

the listings.  Tr. 21.  With respect to functional equivalence, the ALJ found that

Plaintiff had the following limitations in the six domains:

> (1) Less than marked limitation in acquiring and using information (Tr. 26-
>     27);
>
> (2) Less than marked limitation in attending and completing tasks (Tr. 27-
>     29);
>
> (3) Less than marked limitation in interacting and relating with others (Tr.
>     29-30);

(4)  No limitation in moving about and manipulating objects (Tr. 30-31);

(5)  Less than marked limitation in the ability to care for himself (Tr. 31-32);

(6)  Less than marked limitation in health and physical well-being (Tr. 32-33).

As a result, the ALJ concluded that Plaintiff has not been disabled, as defined in the Social Security Act, since the application date of October 18, 2011.  Tr. 33.

On April 6, 2015, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed the medical opinion evidence; and

2.  Whether the ALJ properly weighed the lay witness evidence.

ECF No. 16 at 7-20.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the treating medical opinions of Dr. Steven Gottlieb, and the state agency reviewing physicians.  ECF No. 16 at 7-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r, of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81
F.3d 821, 830–831 (9th Cir. 1995)).

    *1. Steven Gottlieb*

    On November 19, 2013, Steven Gottlieb, M.D., Plaintiff's treating
physician, completed a "domain statement" that assessed Plaintiff's level of
functional ability in each of the six domains.  Tr. 311-13.  Dr. Gottlieb opined that
Plaintiff had "marked" limitations in the domains of "acquiring and using
information" and "attending and completing tasks."  Tr. 311.  He also opined "less
than marked" limitation in the domains of "interacting and relating with others"
and "health and physical well-being;" and no limitation in the domains of "moving
about and manipulating objects" and "caring for yourself."  Tr. 312-13.  The ALJ
granted Dr. Gottlieb's opinion "little weight" for several reasons.  Tr. 25.

    First, the ALJ found "Dr. Gottlieb's opinion [was] rendered in 'check the
box' format, with no support or explanation given for the limitations he opines."
Tr. 25.  Opinions on a check-box form or report which do not contain significant
explanation of the basis for the conclusions may be accorded little or no weight.
*See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Tonapetyan v.
Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("an ALJ need not accept a treating
physician's opinion that is conclusory and brief and unsupported by clinical
findings.").  Plaintiff argues that Dr. Gottlieb's opinion is still entitled "to weight

that an otherwise unsupported and unexplained check-box form would not merit"

because Dr. Gottlieb had seen Plaintiff on "many occasions and had made many

chart notes which support the limitations he identified on the Domain Statement."

ECF No. 16 at 8 (citing *Garrison*, 759 F.3d at 1013).  In *Garrison,* the ALJ erred

by entirely "ignoring" the treating doctor's treatment notes; and failing to

recognize that the treating doctor's check-box opinion was "based on significant

experience with [plaintiff] and supported by numerous records, and [was] therefore

entitled to weight that an otherwise unsupported and unexplained check-box form

would not merit."  *Garrison*, 759 F.3d at 1013.  Plaintiff argues that this case is

analogous to *Garrison* by citing treatment records, including: Dr. Gottlieb's

treatment of Plaintiff for a persistent cough when he was two and a half years old

(Tr. 247); a 2011 well-child office visit at age five noting Plaintiff was very active

and had difficulty sitting quietly, as well as mother's reports of problems with

hyperactivity and inability to focus, which resulted in referral of Plaintiff for a

behavioral health consultation (Tr. 222-26); and two 2012 office visits noting poor

school performance and behavioral concerns reported by Plaintiff's mother, and

considering Vanderbilt Behavior Rating Scales for evaluation of ADHD (Tr. 276,

285).  ECF No. 16 at 8.

     However, the Court notes that unlike the "numerous treatment records" and

"significant experience" identified to support the check-box form in *Garrison*, Dr.

1    Gottlieb's treatment of Plaintiff in this case was largely comprised of routine well-

2    child exams (Tr. 222-26, 230-34, 240-44); or focused on Plaintiff's physical, as

3    opposed to behavioral, concerns (Tr. 237-39, 245-46, 277-78, 292-93).  The Court

4    also notes that treatment records from Lincoln Avenue Medical Center indicate

5    Plaintiff was routinely seen by treatment providers other than Dr. Gottlieb.  Tr.

6    213-221, 227-29, 235-36, 247-51, 270-74, 280-83.  Moreover, the ALJ does not

7    "ignore" Dr. Gottlieb's treatment records, instead, they were consistently

8    recounted as part of the ALJ's decision.  Tr. 23-24.  Finally, Dr. Gottlieb's

9    treatment notes do not appear to include his own clinical observations or objective

10   testing that would qualify as "significant explanation" of the basis for his

11   conclusion that Plaintiff had "marked" limitations in the domains of "acquiring and

12   using information" and "attending and completing tasks."  *See Crane*, 76 F.3d at

13   253.  Thus, the Court finds Dr. Gottlieb's failure to properly support the findings

14   on his check-box form was a specific and legitimate reason for the ALJ to reject

15   Dr. Gottlieb's opinion.

16          Second, the ALJ found Dr. Gottlieb's opinion was "internally inconsistent"

17   because, despite opining "marked" limitations in the domains of "acquiring and

18   using information" and "attending and completing tasks;" Dr. Gottlieb also noted

19   that Plaintiff's prognosis relating to school performance "is fair."  Tr. 25.

20   Consistency with the medical record as a whole, and between a treating physician's

1  opinion and his or her own treatment notes, are relevant factors when evaluating a

2  treating physician's medical opinion. *See Bayliss*, 427 F.3d at 1216.  It was

3  reasonable for the ALJ to highlight the apparent inconsistency between the

4  "drastic" limitations opined by Dr. Gottlieb in "acquiring and using information"

5  and "attending and completing tasks," two domains that are particularly indicative

6  of academic performance; and Dr. Gottlieb's expectation that Plaintiff's

7  improvement would be "fair [regarding] school performance. *See* Tr. 25, 311.

8  However, when explaining the reasons for rejecting medical opinion evidence, the

9  ALJ must do more than state a conclusion; instead, the ALJ must "set forth his

10  own interpretations and explain why they, rather than the doctors', are correct."

11  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting

12  out a detailed and through summary of the facts and conflicting medical evidence,

13  stating his interpretation thereof, and making findings." *Id*.  Here, the ALJ merely

14  states a conclusion, without the requisite specific and detailed findings regarding

15  this reason for discounting Dr. Gottlieb's opinion.  However, any error is harmless

16  because, as indicated in this section, the ALJ offered additional specific and

17  legitimate reasons to reject Dr. Gottlieb's opinion. *Carmickle v. Comm'r, Soc. Sec.*

18  *Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

19

20

While not recognized by Plaintiff,[1] the ALJ additionally found that Dr. Gottlieb's opinion "does not appear supported by the medical or educational records." Tr. 25. The ALJ's decision includes a detailed summary of the medical and educational records. Tr. 23-24; *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (reviewing court is "not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). For instance, Plaintiff's kindergarten teacher commented that Plaintiff was "gone a lot," and in the domains of "acquiring and using information" and "attending and completing tasks" she noted that Plaintiff's primary problem was not "because he isn't able to do the work," but rather his immaturity and being younger than other kids in his class.

[1] In his reply brief, Plaintiff contends that this reason was not offered by the ALJ in the decision, and therefore should not be considered by this Court. ECF No. 20 at 5; *see Bray*, 554 F.3d at 1226 (the court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). However, as part of the section addressing Mr. Gottlieb's opinion, the ALJ found the opinion "[did] not appear supported by the medical or education records." Tr. 25. Thus, the Court may properly consider this reasoning to determine whether the ALJ's decision is supported by substantial evidence in the record as a whole. *See Hill*, 698 F.3d at 1158.

1    Tr. 23-24, 182-83, 188.  As noted by the ALJ, in second grade, Plaintiff's reading

2    teacher noted that Plaintiff "struggles a lot in class to complete any in class

3    assignment due to the fact that it is very difficult for him to read the words."  Tr.

4    24, 205.  Mr. Lopez, Plaintiff's second grade homeroom teacher, noted that

5    Plaintiff had difficulty staying on task and often appeared fatigued, but did not

6    have any noticeable health problems.  Tr.  24, 207-09.  Mr. Lopez also stated that

7    Plaintiff was unfocused at the beginning of the school year, then showed

8    improvement, before regressing again.  Tr. 207.  As noted by the ALJ, it was

9    unclear whether this improvement was due to an increase in ADHD medication

10   around the same time it was noted Plaintiff's school performance improved.  *See*

11   Tr. 299-300.

12           The ALJ also noted the record indicates that Plaintiff was absent more than

13   forty days of school and was tardy more than seventy times over the course of two

14   school years.  Tr. 23, 304-308.  Despite numerous indications that these absences

15   were due to illness and doctor's appointments, "there are minimal corresponding

16   medical records."  Tr. 24; *see* Tr. 264-66, 297-98.  Moreover, in November 2011,

17   Plaintiff was referred to behavioral health services but the initial impression by the

18   medical provider was that Plaintiff was a "healthy patient" and his "behavior [was]

19   related to social situation, malingering, regression."  Tr. 216.  At a behavioral

20   health consultation in November 2011 Plaintiff was observed as "experienc[ing] a

REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

happy mood and affect is calm. His behavior is rather polite and do not upsurge any hyperactivity." Tr. 218.  In April 2012, Plaintiff underwent a complex child psychological assessment during which he showed "some motor restlessness," however, his "attention and concentration abilities were appropriate for his age level" and he "was mostly cooperative." Tr. 24, 253-54.  His full scale IQ was assessed in the upper end of the low average range of intellectual functioning, and he "demonstrated" ADHD.  Tr. 254-55.  In October 2012, Plaintiff's well-child examination at age six checked boxes indicating "normal" behavior and "normal" mental health with no mention of any behavioral issues.  Tr. 281-83.  In September 2013, a treatment note indicated that Plaintiff's teacher reported ADHD medication was "partially effective [but] its effect wears off;" so the dosage was increased and Plaintiff's mother was instructed to return if Plaintiff's symptoms worsened.  Tr. 24, 299-300.

While the most recent educational and medical records, in particular the 2013 domain statements from Dr. Gottlieb and Mr. Lopez (Tr. 201-05, 207-09, 310-13), could be interpreted more favorably to Plaintiff; it was reasonable for the ALJ to rely on inconsistency between Dr. Gottlieb's opinion with the overall medical and educational records as a reason to grant his opinion less weight.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("where evidence is

1  susceptible to more than one rational interpretation, it is the [Commissioner's]

2  conclusion that must be upheld.").

3      The Court finds that the ALJ offered specific and legitimate reasons to reject

4  Dr. Gottlieb's opinion.

5      *2.  Leslie Postovoit, Ph.D. and Nevine Makari, M.D.*

6      Plaintiff also argues that the ALJ erred by granting "great weight" to the

7  opinion of state agency reviewing doctors Leslie Postovoit, Ph.D. and Nevine

8  Makari, M.D.; who jointly found in June 2012 that Plaintiff had "less than marked"

9  limitations in acquiring and using information, attending and completing tasks,

10  interacting and relating with others, caring for yourself, and health and physical

11  well-being.  Tr. 69-71.  They also found Plaintiff had no limitations in the domain

12  of moving about and manipulation of objects.  Tr. 70.  The ALJ accorded the

13  opinions "great weight," in part, because they were "based on a complete review of

14  the medical and educational records."  Tr. 25.  Plaintiff argues this was error

15  because the reviewing doctors were not able to review additional records from

16  2013 that were submitted after their June 2012 opinion.  ECF No. 16 at 10-13.  In

17  particular, and most egregiously according to Plaintiff, the reviewing physicians

18  were unable to review Dr. Gottlieb's domain statement that found marked

19  limitations in two domains, as addressed above; and the domain statement from

20  Plaintiff's second grade teacher that assessed extreme limitations in two domains,

1   as addressed below.  ECF No. 16 at 12-13.  Plaintiff is correct that the state agency

2   physicians were unable to review the "complete" record including documents that

3   were yet to be drafted; however, any error was harmless because the ALJ offered

4   additional reasons for according their opinions great weight.  *Carmickle*, 533 F.3d

5   at 1162-63.

6           The state agency physicians considered objective testing as a basis for their

7   findings, including Plaintiff's low average range of intelligence.  Tr. 25, Tr. 69-71,

8   254.  As noted by the ALJ, the state agency reviewers also relied on evidence

9   indicating that Plaintiff "sometimes engages in manipulative behavior in order to

10  seek attention from his mother."  Tr. 25, 70-71.  Dr. Postovoit repeatedly noted it

11  was "unclear" from the education and medical records if Plaintiff was actually "not

12  in control of movement as would be expected in ADHD" in light of seemingly

13  manipulative behavior to get attention from caregivers.  Tr. 70, 71.  Finally, the

14  ALJ found the state agency physicians' opinions were "supported by the

15  longitudinal history of treatment notes and educational records showing the

16  claimant has struggled in school but is often absent or fatigued, and showed

17  improvement when he is taking medication."  Tr. 25.  The Court may decline to

18  address this issue as it was not raised with specificity in Plaintiff's briefing.  *See*

19  *Carmickle*, 533 F.3d at 1161 n.2.  Regardless, consistency with the *overall* record

20  is a proper consideration when weighing the medical evidence.  *See Orn v. Astrue*,

495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r of Soc. Sec.*

*Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (it is the ALJ's duty to resolve

conflicts in the medical and non-medical evidence).  For the foregoing reasons, the

Court finds the ALJ's consideration of the state agency reviewers' opinions was

supported by substantial evidence.

**B. Lay Witness Evidence**

Plaintiff additionally argues that the ALJ erred in rejecting lay witness

testimony from Plaintiff's mother and his second grade teacher, regarding the

severity of his symptoms.  ECF No. 16 at 13-19.

*1.  Lizbeth Ramos, Plaintiff's Mother*

The Ninth Circuit has summarized the law on lay witness testimony as

follows:

> Lay testimony as to a claimant's symptoms or how an impairment affects
> the claimant's ability to work is competent evidence that the ALJ may
> take into account.  We have held that competent lay witness testimony
> cannot be disregarded without comment and that in order to discount
> competent lay witness testimony, the ALJ must give reasons that are
> germane to each witness.

*Molina*, 674 F.3d at 1114 (quotations and citations omitted).  However, in rejecting

lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even if the ALJ does

"not clearly link his [or her] determination to those reasons," and substantial

evidence supports the ALJ's decision.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.

2001).  Plaintiff argues the ALJ disregarded Ms. Ramos' testimony "without germane reasons."  ECF No. 16 at 17-19.

As noted by the ALJ, Plaintiff's mother Ms. Ramos "did not provide a full functional assessment, but generally testified that the claimant is unable to focus and struggles to complete his work."  Tr. 26, 49-52.  The ALJ granted "little weight" to Ms. Ramos' opinion because the medical records are "minimal" and fail to document the degree of impairment Ms. Ramos is alleging.  Tr. 23-24, 26.  An ALJ may discount lay testimony if it conflicts with the medical evidence.  *See Lewis*, 236 F.3d at 511.  As detailed in the ALJ's decision, and discussed above, the medical evidence included clinical findings and observations of Plaintiff that contradict Ms. Ramos' testimony as to the allegedly disabling degree of Plaintiff's limitations.  *See, e.g.,* Tr. 23-24, 216, 218, 253, 281-83, 292.  This was a germane reason for rejecting Ms. Ramos' lay witness opinion.

In addition, the ALJ discounted Ms. Ramos' lay testimony because it failed to account for Plaintiff's "abysmal" school attendance records that "often show that [Plaintiff] misses or is late for school due to issues related to Ms. Ramos."  Tr. 26.  Plaintiff missed more than forty days of school and was tardy more than seventy times over the course of two school years.  Tr. 23, 303-308.  Plaintiff's principal during the 2011-2012 school year noted "[o]ur only concerns at this time are related to [Plaintiff's] attendance and tardiness."  Tr. 198.  The ALJ

1  additionally noted that despite Ms. Ramos' testimony regarding Plaintiff's inability

2  to focus, he spends time each day watching television and playing video games.

3  Tr. 26, 46.  These inconsistencies further support the ALJ's conclusion that Ms.

4  Ramos' testimony should be assigned less than full weight.  *See Orn*, 495 F.3d at

5  631 (the consistency of an opinion with the record as a whole is a relevant factor in

6  evaluating that opinion).  The ALJ cited germane reasons for rejecting Ms. Ramos'

7  statements about Plaintiff's limitations.[2]

8      *2.  Guillermo Llamas Lopez, Plaintiff's Second Grade Homeroom Teacher*

9      The opinion of an acceptable medical source such as a physician or

10  psychologist is given more weight than that of an "other source."  *See* SSR 06-03p

---

11  [2] The ALJ also noted that Ms. Ramos had a younger child with "more severe issues

12  than the claimant, [who] often requires her attention;" and Ms. Ramos was not

13  working and "survives off child support and food stamps."  Tr. 26.  Plaintiff argues

14  that "neither the fact that [Plaintiff] may not be the only child in the home who has

15  impairments nor his family's financial situation has any bearing on whether he

16  meets the disability criteria or not"  ECF No. 16 at 18.  It is unclear to the Court

17  whether these statements by the ALJ are offered as reasons to reject Ms. Ramos'

18  testimony.  Moreover, assuming, *arguendo*, that the ALJ erred in this reasoning,

19  any error is harmless because the ALJ offered additional germane reasons to

20  discount Ms. Ramos' testimony.  *See Carmickle*, 533 F.3d at 1162-63.

1    (Aug. 9, 2006), *available at* 2006 WL 2329939 at \*2; 20 C.F.R. § 416.927(a).

2    "Other sources" include nurse practitioners, physician assistants, therapists,

3    teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d),

4    416.913(d).  The ALJ need only provide "germane reasons" for disregarding an

5    "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the ALJ is required

6    to "consider observations by nonmedical sources as to how an impairment affects a

7    claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.

8    1987).  Factors for considering opinion evidence from "other sources" include:

9    length and nature of treatment relationship; how well the source explains an

10   opinion and presents evidence in support of the opinion; how consistent the

11   opinion is with medical evidence; and whether the source has a specialty or

12   expertise.  SSR 06-03p at \*4.

13        On November 8, 2013, Guillermo Llamas Lopez, Plaintiff's second grade

14   teacher, completed a domain statement assessing Plaintiff's level of functional

15   abilities in all six domains.  Tr. 207-09.  Mr. Lopez opined "extreme" limitations in

16   the domains of "acquiring and using information" and "attending and completing

17   tasks."  Tr. 207.  He also opined "less than marked" limitations in "interacting and

18   relating with others" and "health and physical well-being;" and "no limitations" in

19   "moving about and manipulating objects" and "caring for yourself."  Tr. 208-09.

20   The ALJ granted "little weight" to Mr. Lopez's opinion for multiple reasons,

including (1) Mr. Lopez is not an acceptable medical source; and (2) "his opinion was rendered in November 2013, and he indicates he only met the Plaintiff in September 2013." Tr. 25 (citing Tr. 209). Plaintiff argues these are not germane reasons to reject Mr. Lopez's opinion. ECF No. 16 at 14-19.

As an initial matter, Plaintiff contends that "the fact that Mr. Lopez is not an 'acceptable medical source' is not a germane reason to reject his opinion regarding the severity of [Plaintiff's] symptoms." ECF No. 16 at 16. "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source'…. However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source.'" SSR 06-03p at *5. Thus, while the ALJ may give less weight to Mr. Lopez's opinion because it is not from an "acceptable medical source;" it would be error to reject his opinion *solely* on this basis. However, any error is harmless in this case because the ALJ gave several additional reasons for granting Mr. Lopez's opinion little weight. *See Carmickle*, 533 F.3d at 1162-63.

First, the ALJ reasoned that "Mr. Lopez had only known [Plaintiff] for about two months and had not reviewed any medical records, [thus] his opinion is not

particularly helpful in assessing [Plaintiff's] actual functioning." Tr. 26. The Court agrees with Plaintiff that it was unnecessary for Mr. Lopez to review medical records to offer opinions about his level of functioning in his classroom. ECF No. 16 at 14-15. However, the length of the relationship between Plaintiff and Mr. Lopez, in this case only two months, was a valid and reasonable factor to consider in according Mr. Lopez's "other source" opinion less weight. *See* SSR 06-03p at *4.

Second, while not specifically addressed in Plaintiff's briefing, the ALJ further found "the record indicates that [Plaintiff] has previously been excessively tardy or absent from school, and a prior educator found that at least part of his academic problems were due to poor reading skills. Mr. Lopez does not assess these factors so it is unclear what, if any role they play in the functional limitations that he assesses in his opinion." Tr. 26. The consistency of an opinion with the record as a whole is a relevant factor in evaluating that opinion. *See Orn*, 495 F.3d at 631. The record indicates that Plaintiff was regularly absent or tardy during his kindergarten and first grade years; and these absences were specifically noted as a concern by his kindergarten teacher and his principal in the 2011-2012 school year. Tr. 181, 198, 303-308. Plaintiff was also absent once and tardy six times during the first two months of his second grade year with homeroom teacher Mr. Lopez. Tr. 303. Moreover, and perhaps most glaringly, the record contains evidence from

Plaintiff's second grade reading teacher that Plaintiff "struggles a lot in class to complete any in class assignment *due to the fact* that it is very difficult for him to read the words."  Tr. 203, 205 (emphasis added).  This evidence is inconsistent with Mr. Lopez's opinion that "lack of concentration" as the only reason Plaintiff is unable to complete tasks.  Tr. 207.  The overall record also includes consistent ratings of Plaintiff's academic performance in reading as "problematic," "needs improvement," "below aimline," and "making progress toward standard."  Tr. 147, 201, 203, 205-06.  The failure of Mr. Lopez's opinion to address absenteeism, tardiness, and Plaintiff's reading skills, in addition to the inconsistency between the overall record and Mr. Lopez's opinion, were germane reasons to discount his opinion.  *See Burch*, 400 F.3d at 679 ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

For all of the foregoing reasons, the ALJ properly considered Mr. Lopez's "other source" opinion and did not err in giving it little weight.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 17, be

**GRANTED**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

1    A magistrate judge's recommendation cannot be appealed to a court of

2  appeals; only the district judge's order or judgment can be appealed.

3    The District Court Executive is directed to enter this Report and

4  Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

5  **MANAGEMENT DEADLINE ACCORDINGLY.**

6    DATED August 11, 2016.

7                    s/Mary K. Dimke
                    MARY K. DIMKE
8          UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20